UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| KAREN CROWLEY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:24-CV-00056-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| SULLIVAN COUNTY, TENNESSEE, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

On April 19, 2023, Casey Crowley was fatally shot while seated in his truck in the parking lot of a Dollar General store. The shots were fired by Sergeant Michael Nygaard and Deputy Benjamin Beach of the Sullivan County Sheriff's Office. Plaintiff, Crowley's spouse, filed this action on behalf of all wrongful-death beneficiaries, alleging under 42 U.S.C. § 1983 that Nygaard and Beach used excessive force in violation of the Fourth and Fourteenth Amendments and that Deputy Tyler McCready—who was present at the scene—is liable for failing to intervene. Defendants contend that qualified immunity applies and argue that no genuine dispute of material fact exists, entitling them to judgment as a matter of law.

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. 29]. Plaintiff filed a response [Doc. 45], and Defendants filed a reply [Doc. 47]. The motion is ripe for resolution. For the reasons below, Defendants' Motion for Summary Judgment [Doc. 29] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion to Defer Consideration of Summary Judgment [Doc. 39] and Defendants' Motion to Stay Discovery [Doc. 41] are **DENIED AS MOOT**.

## I.    BACKGROUND

On April 19, 2023, Sullivan County Sheriff deputies were dispatched to a Dollar General store in Blountville, Tennessee to conduct a welfare check after a report that a man had been slumped over the steering wheel of a pickup truck in the parking lot.  Deputies McCready and Beach responded and found Casey Crowley seated behind the wheel and initially unresponsive. After engaging him, Crowley produced two identification cards but was unable to hold a coherent conversation and appeared disoriented.  The deputies asked him to exit the vehicle; he refused.

Sergeant Nygaard arrived while McCready and Beach were talking to Crowley.  Nygaard also instructed Crowley to exit the vehicle, but Crowley again refused.  By this time, the driver's door was open.  Nygaard reached across Crowley in an attempt to remove the keys from the ignition.  As Nygaard reached toward the keys, Crowley grabbed his arm, and a physical struggle ensued.  McCready and Beach joined in attempting to remove Crowley from the vehicle.

According to Nygaard, during the struggle he observed Crowley move his right hand toward his right pocket.  Nygaard states that he grabbed Crowley's hand and felt what he believed to be the butt of a firearm.  Nygaard shouted, "Gun! Gun! He's got a gun!"  The struggle continued. Nygaard asserts that Crowley removed the firearm from his pocket.  Nygaard says he had his hand covering the trigger guard and the side of Crowley's firearm but that he was losing ground, and he believed Crowley was about to fire.  Nygaard further states that the barrel of the firearm was pointed toward McCready, whose head was positioned near Crowley's lap area.  Beach states that he saw a glimpse of a black object in Crowley's hand.  Nygaard then fired two shots.  After hearing gunshots, Beach fired two additional shots, though he states he did not know who fired first. McCready states that he did not see a firearm in Crowley's hand.  The entire encounter lasted about thirty seconds or less.

2

Crowley sustained multiple gunshot wounds including one on his right hand. Blood was found on the passenger-side headrest. A bullet hole was located above the passenger seatbelt, and bullet holes were found through Crowley's two identification cards. Beach reported that he had blood on his face and uniform following the shooting. No blood or latent fingerprints were found on Crowley's firearm.

Plaintiff filed suit under 42 U.S.C. § 1983, alleging violations of Crowley's rights under the Fourth and Fourteenth Amendments and other state law claims. [Doc. 17]. Defendants moved for summary judgment, asserting qualified immunity. [Doc. 29]. They contend the officers reasonably feared for their lives because Crowley removed a firearm from his pocket and aimed it at them. [Doc. 31, pg. 8]. Defendants also argue that McCready neither had a duty nor a realistic opportunity to intervene. *Id.* pgs. 9–10. Plaintiff disputes Defendants' version of events and contends the physical and forensic evidence proves Crowley did not reach for the firearm, remove it from his pocket, or aim it at the deputies. [Doc. 45, pgs. 8–9]. Plaintiff has also submitted expert testimony challenging Defendants' version of the struggle and the position of Crowley's body and firearm at the time he was shot. *See* [Doc. 52].

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. A fact is material only if it might affect the outcome of the case under the governing law. *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III.    ANALYSIS

Defendants assert that they are entitled to qualified immunity because their use of force was objectively reasonable under the circumstances. Qualified immunity shields public officials from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether an officer is entitled to qualified immunity, courts apply a two-step inquiry: (1) "whether the officer violated the plaintiff's constitutional rights"; and (2) "whether that constitutional right was clearly established at the time of the incident." *Estate of Hill ex rel. Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017). Courts may address these prongs in any order, and if the plaintiff fails to satisfy either one, qualified immunity applies. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236).

### A.    Excessive Force – Nygaard and Beach

Nygaard and Beach assert they are entitled to qualified immunity because their use of deadly force was objectively reasonable in light of Crowley's alleged threat with a firearm. *See* [Doc. 31, pg. 8]. Plaintiff disputes that account, arguing that forensic evidence and expert testimony create a genuine dispute over whether Crowley ever reached for the firearm, removed it from his pocket, or aimed it at the officers. [Doc. 45, pgs. 8–9; Doc. 52, pg. 2].

4

Under the first prong of the qualified-immunity analysis, the Court must determine whether the facts, viewed in the light most favorable to Plaintiff, show a violation of the Fourth Amendment. *See Miracle*, 853 F.3d at 312. The use of deadly force constitutes a seizure governed by the Fourth Amendment's objective-reasonableness standard. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *see also Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006).

Objective reasonableness is assessed "at the moment" force was used and from the perspective of a reasonable officer on the scene, not with hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts evaluate the totality of the circumstances, guided by the three familiar *Graham* factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The first *Graham* factor weighs in Plaintiff's favor. *Id.* The officers were dispatched to conduct a welfare check after receiving a report that a man was slumped over the steering wheel of a parked vehicle. *See* [Doc. 44, ¶¶ 1–2]. The encounter did not arise from a report of violent criminal activity. While the officers later suspected possible impairment, the initial dispatch concerned a potential medical issue rather than a serious crime.

The second factor—whether Crowley posed an immediate threat—is the central issue in this case. *See Graham*, 490 U.S. at 396. It is undisputed that a struggle occurred after Nygaard reached into the vehicle to remove the keys. [Doc. 44, ¶ 19]. Nygaard asserts that during that struggle he felt the butt of a firearm, that Crowley removed the weapon from his pocket, and that the firearm was pointed toward McCready. *Id.* ¶¶ 21, 27–30. Plaintiff, however, presents contrary forensic evidence and expert testimony suggesting that Crowley did not reach for or remove the firearm from his pocket and that his right hand was positioned near the passenger-side headrest holding identification cards when he was shot. *See* [Doc. 45, pgs. 8–9; Doc. 45-1, pg. 2; Doc. 45-

5, pg. 3; Doc. 45-8; Doc. 45-9; Doc. 45-10; Doc. 45-11; Doc. 45-12; Doc. 45-13; Doc. 52, pg. 2; Doc. 52-1, pgs. 24–25; Doc. 52-2, pgs. 28–36].

The Sixth Circuit has held that "mere possession of a weapon is not sufficient to justify the use of deadly force." *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F. 4th 468, 480 (6th Cir. 2022). While deadly force may be reasonable where officers could reasonably conclude that a suspect is about to use a weapon, *see Gambrel v. Knox Cnty.*, 25 F.4th 391, 405–06 (6th Cir. 2022), that determination turns on whether the suspect posed an imminent threat at the moment force was used. *See Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020); *Jacobs v. Alam*, 915 F.3d 1028, 1040 (6th Cir. 2019) ("[A]n officer need not face the business end of a gun to use deadly force.").

Plaintiff's expert challenges the officer's account of the position of the firearm and Crowley's body at the time of the shooting. Plaintiff highlights the lack of blood or latent fingerprints on the firearm, despite evidence of blood elsewhere in the vehicle and reportedly on Beach. At summary judgment, the Court does not resolve competing expert testimony or weigh credibility. The question is whether the record presents a genuine dispute of material fact.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Crowley did not reach for, remove, or aim the firearm and therefore did not pose an immediate threat of serious physical harm at the moment deadly force was used. *See King v. Taylor*, 694 F.3d 650, 662 (6th Cir. 2012) ("In our view, a jury could find, based upon the forensic evidence, expert testimony, and common sense, that King did not threaten the officers by pointing a gun at them just before he was shot."). There are disputed genuine issues of material fact about whether Crowley reached for or pulled the firearm out of his pocket and was aiming it at the officers. These questions must be resolved by a jury.

As for Beach's use of deadly force, the same conclusion applies. Genuine issues of material fact exist as to whether Beach knew that Crowley posed an immediate threat to the safety

of the officers. *See Graham*, 490 U.S. at 396. As in *David v. City of Bellevue*, it does not matter that Beach shot after Nygaard because the Sixth Circuit has held "an officer's opening fire—even if he was unsure who shot first—was sufficient to defeat qualified immunity if the victim was not a threat." 706 F. App'x 847, 852 (6th Cir. 2017) (citing *Floyd v. City of Detroit*, 518 F.3d 398, 408 (6th Cir. 2008)).

The third factor weighs in Defendants' favor to a limited extent. *See Graham*, 490 U.S. at 396. Crowley refused to exit the vehicle and physically struggled with the officers. Some force may therefore have been justified. That said, resistance alone does not justify deadly force absent evidence that the suspect posed an imminent threat of serious physical harm. *See Bouggess v. Mattingly*, 482 F.3d 886, 891 (6th Cir. 2007); *Cardona v. City of Cleveland*, 129 F.3d 1263, 1997 WL 720383, at *3–4 (6th Cir. Nov. 10, 1997) (unpublished) (denying qualified immunity where officer and suspect struggled, and the suspect was shot during the struggle, where there was a disputed issue of fact as to whether the officer and suspect struggled over a firearm); *Yatsko v. Graziolli*, 458 F. Supp. 3d 702, 716 (N.D. Ohio 2020), *aff'd in part, appeal dismissed in part*, No. 20-3574, 2021 WL 5772527 (6th Cir. Dec. 6, 2021) (same). If a jury were to conclude that Crowley did not reach for or draw his firearm, then resistance during a struggle would not, by itself, establish probable cause to believe he posed a deadly threat.

Nygaard's entitlement to qualified immunity turns on whether it was objectively reasonable to believe Crowley was about to fire a weapon. That determination depends on whether Crowley in fact reached for, removed, or aimed the firearm—facts that are genuinely disputed on this record. When the qualified-immunity analysis is "completely dependent upon which view of the facts is accepted by the jury," summary judgment is inappropriate. *Brandenburg v. Cureton*, 882 F.2d 211, 215–16 (6th Cir. 1989).

Beach asserts that he heard Nygaard shout that Crowley had a firearm and saw a black object in Crowley's hand before firing. Even so, his reasonableness must be evaluated based on the facts a jury could find. If a jury determines that Crowley never removed the firearm and did not present an imminent threat, then a reasonable jury could also conclude that Beach lacked probable cause to believe deadly force was necessary. *See David*, 706 F. App'x at 852.

Because the resolution of the excessive-force claim depends on disputed material facts about the presence and positioning of the firearm, as well as Crowley's actions before he was shot, Nygaard and Beach are not entitled to qualified immunity at this stage. Taking Plaintiff's version as true—that Crowley did not reach for, remove, or aim the firearm—it was clearly established that officers may not use deadly force against a suspect who does not pose an immediate threat of serious physical harm. *Garner*, 471 U.S. at 11–12; *Bouggess*, 482 F.3d at 896; *King*, 694 F.3d at 664.

### B. Failure to Intervene – McCready

Plaintiff alleges that Deputy McCready is liable for failure to intervene when Nygaard and Beach used deadly force against Crowley. Defendants contend that the facts cannot support a claim for failure to intervene against McCready.

An officer may be held liable for failing to intervene when: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Critical to the analysis, an officer is not liable where the alleged excessive force occurs too quickly to allow for meaningful intervention. In *Pineda v. Hamilton County*, the Sixth Circuit noted that force lasting ten seconds or less does not afford an officer "enough time to perceive the incident and intervene." 977 F.3d 483, 493 (6th Cir. 2020) (citation omitted); *see Ontha v. Rutherford Cnty.*,

222 Fed. Appx. 498, 506 (6th Cir. 2007) (finding that six or seven seconds was insufficient time to compel intervention).

Plaintiff contends that McCready had an opportunity and the means to intervene because the entire altercation lasted around 30 seconds. [Doc. 45, pgs. 18–19]. But the relevant inquiry is not the total duration of the encounter; it is the duration of the allegedly excessive force itself. *See Pineda*, 977 F.3d at 493. Here, even viewing the evidence in the light most favorable to Plaintiff, the four shots were fired within about six seconds after Nygaard drew his weapon. [Doc. 44, ¶ 37]. Plaintiff disputes Defendants' estimate of four to five seconds but contends the shots were fired within six seconds. *Id.* Even so, that time frame is insufficient to establish a realistic opportunity to perceive and prevent the use of deadly force. Nothing in the record suggests that McCready had notice that deadly force would be used or that he had the practical ability to stop the shooting once it began. The record does not support a claim that excessive force was used during the pre-shooting struggle, nor that McCready had reason to know deadly force would be deployed unlawfully before it occurred. Accordingly, because McCready lacked a realistic opportunity to intervene, he is entitled to qualified immunity on the failure-to-intervene claim and Count Two must be dismissed.

## IV. CONCLUSION

For all these reasons, Defendant's motion for summary judgment for qualified immunity is **DENIED** as to Nygaard and Beach and **GRANTED** as to McCready on Count Two for failure to intervene. Plaintiff's Motion for Court to Defer Considering Defendants' Motion for Summary Judgment [Doc. 39] and Defendants' Motion to Stay Discovery [Doc. 41] are **DENIED AS MOOT**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge